IN RE: APPEAL OF MEDICAL CENTER (BOWMAN GRAY SCHOOL OF MED-
CINE OF WAKE FOREST UNIVERSITY AND NORTH CAROLINA BAP-
TIST HOSPITALS, INC.) FROM DECISION OF THE COMMISSIONER OF
INSURANCE, NORTH CAROLINA DEPARTMENT OF INSURANCE

No. 8521SC1065

(Filed 5 August 1986)

**Statutes § 5.5— interpretation of State building code by Insurance Commissioner —
erroneous**

The superior court correctly ruled that the Insurance Commissioner's
decision to require a proposed high-rise building to be provided with emergen-
cy generator power for fans that vent smoke in areas of the building in addi-
tion to elevator shafts, stairways, and areas of refuge was affected by an error
of law where the plain language of Section 506.13(a)(1) of the North Carolina
State Building Code limits the requirement of an emergency power supply to
the fans that serve for pressurization, smoke venting or smoke control for
elevator shafts, stairways, and areas of refuge. While the building code is to
be liberally construed, its plain language cannot be ignored.

APPEAL by respondent James E. Long, Commissioner of In-
surance, from *Washington, Judge.* Judgment entered 27 August
1985 in Superior Court, FORSYTH County. Heard in the Court of
Appeals 6 February 1986.

*Attorney General Lacy H. Thornburg by Special Deputy At-
torney General Isham B. Hudson, Jr., for the State.*

*Womble, Carlyle, Sandridge & Rice by Roddey M. Ligon, Jr.,
and Anthony H. Brett for petitioner Medical Center.*

COZORT, Judge.

The Commissioner of Insurance ruled that Section 506.13(a)(1)
of the North Carolina State Building Code requires the Medical
Center's proposed Class III high-rise building to be provided with
emergency generator power for fans that vent smoke in some
areas of the building in addition to elevator shafts, stairways, and
areas of refuge. His decision was reversed by the superior court,
which held the Building Code does not require emergency power
for vent fans in the additional areas. We affirm the superior
court.

In late 1984 the Medical Center, consisting of Bowman Gray
School of Medicine of Wake Forest University and North Carolina

Baptist Hospitals, Inc., located in Winston-Salem, North Carolina, submitted to the Engineering Division of the North Carolina Department of Insurance (hereinafter "Department") design development documents and final construction documents for a new inpatient tower. The submission was made pursuant to the North Carolina State Building Code, hereinafter "Building Code."

The tower (defined under the Building Code as a Class III high-rise building) will be equipped with sprinklers and will contain windows that cannot be opened to vent products of combustion and smoke in the event of fire. Documents submitted by the Medical Center show that emergency electrical power would not be provided for the air handling equipment designed for venting the building, other than in elevator shafts, stairways, and areas of refuge.

During review of the final construction documents, the Department informed the Medical Center's architects and engineers that the Department's interpretation of Section 506.13 of Volume 1 of the Building Code required that air handling equipment designed for smoke removal in some areas other than elevator shafts, stairways, and refuge areas was to be provided with emergency power.

After an unsuccessful attempt to get the Department to alter its position, the Medical Center requested a hearing pursuant to G.S. 143-140 before the Commissioner of Insurance on the Department's interpretation of Section 506.13 of Volume 1 of the Building Code. On 27 June 1985 the Commissioner ruled that the Building Code required emergency power for the air handling equipment (fans) in question. On 3 July 1985, pursuant to G.S. 143-141, the Medical Center sought judicial review of this decision in superior court. On 27 August 1985 the Commissioner's decision was reversed by the Honorable Edward K. Washington. On 30 August 1985, the Commissioner appealed to this Court Judge Washington's order.

The issue before the Commissioner, the superior court, and this Court is whether the Building Code requires the Medical Center's proposed inpatient tower to be provided with emergency power for fans that vent smoke in those parts of the building not consisting of elevator shafts, stairways, and areas of refuge. The resolution of this issue turns upon the interpretation of Sec-

---

---

tion 506.13(a)(1) of Volume 1 of the Building Code. That section provides:

506.13—EMERGENCY ELECTRICAL POWER SUPPLY.

(a) Emergency Generator Capacity—Class I, II and III buildings shall be provided with an approved emergency generator power supply, located in a 2 hour fire rated enclosure, properly ventilated to the outside. The emergency generator power supply shall be capable of operating under a full load for at least 2 hours and shall be automatically switched over in the event of failure of the normal source of power supply or manually operational for emergency power supply for:

(1) Pressurization Fans—Fans to provide required pressurization, smoke venting or smoke control for elevator shafts and stairways and areas of refuge in 506.3(c), 506.7(b) and 506.18(d). (Emphasis added.)

Commissioner Long, in interpreting the underlined language of Section 506.13(a)(1), concluded that,

[t]he Department has routinely interpreted the N. C. Building Code to insure the maximum life safety. Proper life safety is accomplished in high rise structures by providing (1) pressurization of some areas, (2) venting of products of combustion from the fire floor, and (3) preventing smoke contamination in areas such as elevators and stairs used for exit purposes and for designated areas of refuge.

The Commissioner further concluded that,

[i]n order to accomplish these purposes, Section 506.13(a)(1) must be interpreted to mean that the three types of fans required to be served by emergency power are the following:

(1) Those that provide "required pressurization." This is not limited to pressurization for elevator shafts, stairways, and areas of refuge, but applies to any other area of the building requiring pressurization.

(2) Those that provide for venting smoke. When taken together with Section 506.5, plain language and common

sense dictate that emergency power cannot be limited to just those fans that serve elevator shafts, stairways, and areas of refuge, but must also serve other parts of the building occupied by patients and employees.

(3) Those that provide smoke control (by pressurization) in elevator shafts, stairways, and areas of refuge—areas where venting by exhausting smoke is not appropriate or specified.

The superior court ruled that the Commissioner's decision was affected by an error of law and reversed the Commissioner. The superior court found the "plain language" rule of statutory construction to be applicable in construing the meaning of Section 506.13(a)(1). It determined "that the plain language of this Section limits the requirement of an emergency power supply to the fans that serve for pressurization, smoke venting or smoke control for elevator shafts and stairways and areas of refuge." The superior court noted that the Commissioner "contends that the Court should defer to the interpretation of the Code made by the officials of the Department of Insurance since that is the Department charged with the enforcement of the Code." The superior court noted, however, "that a desire to defer to the interpretation of the Insurance Department does not permit the Court to ignore the plain language of the Code. It is the duty of the administrative agency to apply the Code as it is written, and likewise the responsibility of the Court to apply the Code as it is written." We agree with the superior court's reasoning and its "plain language" interpretation of Section 506.13(a)(1).

As we stated in *State v. Felts*, 79 N.C. App. 205, 208-09, 339 S.E. 2d 99, 101, *disc. review denied*, 316 N.C. 555, 344 S.E. 2d 11 (1986):

In construing a statute, its "words are to be given their plain and ordinary meaning unless the context, or the history of the statute, requires otherwise." *State v. Wiggins*, 272 N.C. 147, 153, 158 S.E. 2d 37, 42 (1967), *cert. denied*, 390 U.S. 1028, 20 L.Ed. 2d 285, 88 S.Ct. 1418 (1968). When a statute's language is clear and unambiguous, it must be given effect, and its clear meaning may not be evaded by the courts under the guise of construction. *State ex rel. Utilities Commission v. Edmisten*, 291 N.C. 451, 465, 232 S.E. 2d 184, 192 (1977).

The clear language of Section 506.13(a)(1) requires "emergency generator power supply" only for fans which "provide required pressurization, smoke venting or smoke control for elevator shafts and stairways and areas of refuge in 506.3(c), 506.7(b) and 506.18(d)." Section 506.13(a)(1) simply does not require emergency power fans that vent smoke in other parts of the building. While the Building Code is to be liberally construed in order to accomplish its purpose, G.S. 143-138(c), we cannot ignore the plain language of Section 506.13(a)(1). It might be true, as the Commissioner concluded, that "[p]roper life safety is accomplished in high rise structures by providing (1) pressurization of some areas, (2) venting of products of combustion from the fire floor, and (3) preventing smoke contamination in areas such as elevators and stairs used for exit purposes and for designated areas of refuge." The Building Code Council, however, did not require emergency power for fans to vent smoke other than those fans for providing "required pressurization, smoke venting or smoke control for elevator shafts and stairways and areas of refuge in 506.3(c), 506.7(b) and 506.18(d)." Section 506.13(a)(1). We agree with the superior court "that if the Building Code Council had intended to make the emergency power requirement applicable to fans providing smoke venting or smoke control throughout the building, the Council would have used language other than language specifying that the requirement applies only to stairways, elevator shafts and areas of refuge." We cannot interpret the Building Code to require more than is provided in its plain language.

Affirmed.

Judges WELLS and WHICHARD concur.